# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEL M. MARIN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11cv230 |
| | ) | **Electronic Filing** |
| **LA PALOMA HEALTHCARE CENTER** | ) | |
| and its alter egos; **ITALIAN** | ) | |
| **MAPLE HOLDINGS, LLC**; **PLUM** | ) | |
| **HEALTHCARE GROUP**; **MARK** | ) | |
| **BALLIF**; **PAUL HUBBARD**; | ) | |
| **ORVILLE LLOYD MARLETT**; | ) | |
| **GRUPO TELEVISIA** | ) | |
| a foreign corporation, and its alter egos | ) | |
| doing business as Xetv San Diego 6 | ) | |
| Television; **JEANE LENORE MARLETT** | ) | |
| **TRUST**; **EMILIO AZCARRAGA JEAN**; | ) | |
| **GUSTAVO CISNEROS**; **ALFANSO DE** | ) | |
| **ANGOITIA**; **BERNARDO GOMEZ** | ) | |
| **MARTINEZ**; **MICHAEL RICHTER**, | ) | |
| jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Mel M. Marin ("plaintiff") filed a complaint in this Court on October 5, 2011, seeking

redress under purported causes of action for conversion, fraud and deceit, assault and battery,

section 1983 civil rights, interference with business, intentional infliction of emotional distress,

defamation, invasion of privacy, and wrongful death. *See* Complaint (Doc. No.s 1-2 & 1-3).[1]

---

[1] Plaintiff, also known as Melvin M. Marinkovic, is a serial *pro se* filer who has filed vexatious litigation in this court in *Mel Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18), *aff'd*, 525 F. App'x 74 (3d Cir. 2013); *In re: Joseph Fragile, et al.*, 2:11cv788 (Doc. No. 8); *In re: Joseph Fragile, et al.*, 2:11cv789 (Doc. No. 7), *Mel Marin v. Tom Leslie, et al.*, 2:09cv1453 (Doc. No.s 57 & 58); and *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 21). He has filed an action challenging the actions of private citizens in opposing his campaign for federal congress, which the court found likely to be "more of the same." *See Marin v. Robert A. Biros, et al.,* 2:11cv884 (Doc. No. 6 at 4). Plaintiff also has pursued an action challenging the need for him to submit his social security number in order to receive a profession license as an

This action is related to the action plaintiff filed at *Marin v. Biros, et al.*, 1:11cv884. That action

arose while plaintiff was "a candidate for Congress in the Western District of Pennsylvania."

Complaint at 1:11cv884 (Doc. No. 1-2 in 1:11cv884) at ¶1. Plaintiff had registered as a

candidate in the primary election for the 3rd Congressional District in order to challenge

Representative Kathy Dahlkemper for the democratic nomination. *Id.*; *see also* Memorandum

Order of August 30, 2012, in *Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18 in

1:11cv102) at 4, *aff'd*, 525 F. App'x 74 (3d Cir. 2013). In that action plaintiff contended

generally that Biros and her husband, as private citizens, published an article on the internet that

was critical of plaintiff's qualifications for public office and suggested in a false light that he had

---

Emergency Medical Technician which the court found to be without merit at summary judgment. *See* Opinion of April 11, 2014 in *Mel Marin v. William McClincy and Melissa Thompson*, 1:11cv132 (Doc. No. 81 in 1:11cv132). He also has filed over 70 proceedings in other jurisdictions and been placed on the "Vexatious Litigant List" by the State of California in connection with a filing in the San Diego Superior Court at No. 720715. *See* Transmittal Statement of the Bankruptcy Court to Accompany Notice of Appeal (Doc. No. 1-14) in *In re: Joseph Fragile, et al.*, 2:11cv789 (W.D. Pa. June 15, 2011) at 6 n.3. Plaintiff "was once a law clerk in the federal court and a 9th Circuit extern." Verified First Amended Complaint in *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 3) at ¶ 112.

 Plaintiff also uses different addresses in different states to maintain his pending cases. He frequently claims not to have received mail at the address he maintains in the court's docket and seeks to reset his own deadlines for compliance with any particular pretrial deadline. A review of his filings in the related dockets reflects the use of such tactics. *See e.g.* Motion for Service (Doc. No. 13 in 1:12cv139); Motion for an Order to Allow Filing of Opposition to Motion to Dismiss Out-of-Time (Doc. No. 17 in 1:12cv139); Notice of and Motion for Leave to Allow Responses to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send Case Management Order and Declaration in Support (Doc. No. 51 in 2:09cv1453) at 1; Notice of and Motion to Supplement Motion for Late Response to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send 2011 Case Management Order (Doc. No. 55 in 2:09cv1453) at 1; Plaintiff's Notice of and Motion for Leave to File a Pre-Trail Statement Out-of-Time (Doc. No. 31 in 2:06cv690) at 1; Plaintiff's Notice of Change of Address and Motion for Remailing (Doc. No. 52 in 1:11-cv-132); Motion for Leave to File Opposition to Summary Judgment Out of Time (Doc. No. 64 in 1:11-cv-132 at 5-6); Motion for Leave to File Third Amended Complaint Out of Time (Doc. No. 65 in 1:11-cv-132 at 1). The docket verifies that in accordance with the Local Rules all orders and opinions are mailed to plaintiff at the mailing address he has provided for the particular case (which includes a change of address upon proper notification to the Clerk).

committed a serious crime, to wit, having murdered his mother. The other defendants in that action then failed to correct the misinformation after having an opportunity to do so. *Id.* at ¶¶ 8-11. The remaining defendants in that action either assisted these defendants or failed to take appropriate steps to correct the misinformation that was disseminated about defendant during his candidacy.

In the instant action plaintiff seeks to sue the purported originators of the false story used against him in *Marin v. Biros, et al.*, 1:11cv884. *See* Memorandum of Law on Jurisdiction (Doc. No. 1-1 in 1:11cv230) at 1. These individuals and entities all took actions in California and jurisdictions other than Pennsylvania. *Id.*; *see also* Complaint in 1:11cv230. Plaintiff suffered an injurious effect from their conduct in Pennsylvania and contends that his injuries in his race for office are sufficient to support jurisdiction and venue. *Id.* Plaintiff also sues as "as inheritor of his Father's and Mother's causes of action (survival actions) against those same defendants in California, because the defamation [] was intended to interfere with son's duties under his family trust to rebuild his family's real estate business in Erie, Mercer and Lawrence [counties, Pennsylvania] that he started to do in 1999, and to protect his parents and prosecute actions for harms against them." *Id.* at 2.

Plaintiff further explains that "[i]n other words, the facts for the survival claims for Father and Mother are 'inextricably intertwined' with plaintiff's own claims against them on defamation that hurt plaintiff here." *Id.* "Defendants thereby interfered with plaintiff's powers of attorney and his contracts with his parents to prosecute their actions and those of their estate, and to rebuild their real estate business in Pennsylvania which plaintiff was attempting to do in 2009 with bids to Sharon City as shown in the related action *Marin v. Fragle*, 2:09cv1333 (W.D. Pa. 2009)." *Id.*

Plaintiff submits that jurisdiction exists over half of the claims because he was injured in this district in conjunction with his candidacy for congressional office. The claims of his father and mother's estate are intertwined with plaintiff's claims and defendants hurt plaintiff for the purpose of hurting his parents and their trust. *Id.* And this state of affairs is sufficient to invoke jurisdiction and avoid a transfer or dismissal base on *forum non-conveniens*.

In *Marin v. Mayor Joseph Sinnot, et. al*, 1:12cv139, this court determined that plaintiff had an obligation to employ reasonable efforts to effectuate service before a request is made to the Marshal Service to effectuate service of the complaint. *See* Opinion of March 26, 2014 (Doc. No. 21 in 1:12cv139) at 9; *see also* Local Rule 10(B) (all pro se filers assume responsibilities inherent to litigation, including responsibility for service of a complaint). Here, plaintiff has failed to make timely service of his complaint and no extension for addition time under Rule 4(m) has been requested. In addition, plaintiff has failed to keep his address current. Every address provided by plaintiff in his more recent spate of filings is out-of-date and mail sent to plaintiff at his various addresses of record consistently has been returned to the court by the United States Postal Service with a label indicating the address is no longer valid and a forwarding address is not available. *See e.g.* Docket sheet and staff notes in *Mel Marin v. William McClincy and Melissa Thompson*, 1:11cv132; *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 and *Mel Marin v. Tom Leslie, et al.*, 2:09cv1453 (each case listing the address provided by plaintiff in this action and containing staff notes reflecting the return of all opinions and orders sent to plaintiff at the provided Catonville, MD, address).[2] Given this state of affairs, the court can neither direct plaintiff to attempt to effectuate service of his complaint

---

[2] Plaintiff changed his address in the related action of Marin v. Biros from the address in the current record to the Catonville, MD address. See Notice of May 30, 2013 (Doc. No. 5). He did not change the address in this action, however, and the court will mail a copy of this Memorandum and Order of Court to the address of record as is the Court's standard policy.

nor direct plaintiff to submit proof of attempted service and thereafter provide United States

Marshal Service 285 forms so that the Marshal Service may attempt to effectuate service. The

matter is only further complicated and the prejudice to defendants compounded by the passage of

36 months since plaintiff commenced this action.

A court's decision to dismiss for failure to prosecute is committed to the exercise of its

sound discretion. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 230 (3d Cir. 1998)

("We review for abuse of discretion a district court's dismissal for failure to prosecute pursuant

to Rule 41(b)."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City*

*School Dist.*, 550 U.S. 516 (2007). In exercising that discretion, a district court should, to the

extent applicable, consider the six factors identified in *Poulis v. State Farm Fire and Casualty*

*Co.*, 747 F.2d 868 (3d Cir. 1984), to determine whether the sanction of dismissal is warranted.

*Harris v. City of Philadelphia*, 47 F.3d 1311, 1330 n.18 (3d Cir. 1995).

In *Poulis*, the United States Court of Appeals for the Third Circuit identified the

following six factors to be considered in determining whether dismissal is proper:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the
> adversary caused by the failure to meet scheduling orders and respond to
> discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the
> attorney was willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense.

Id. at 868 (emphasis omitted). These factors must be balanced, although not all need to weigh in

favor of dismissal before dismissal is warranted. *Hicks v. Feeney*, 850 F.2d 152 (3d Cir. 1988).

Consideration of these factors weighs in favor of dismissal. Under this court's local rules

and established *pro se* practices and procedures plaintiff personally is responsible for supplying

the court with an address that will foster direct and timely communication with the court. He has

failed to do so. Further, he has failed to file any motion or provide any form of communication in an effort to keep the case from getting stale.

Defendants have been prejudiced by plaintiff's failure to attempt service of the complaint and in the event he did not make service thereafter provide 285 forms so that the Marshal Service could effectuate timely service. More than three years have passed since the events in question and defendants have not even been made aware of the existence of plaintiff's potential claims against them.

As noted above, plaintiff has a history of filing frivolous lawsuits for vexation purposes. A mere review of plaintiff's complaint strongly suggests that the instant action is more of the same.

Furthermore, there does not appear to be a more sensible or better suited sanction. A lesser sanction would effectively be no sanction.

Moreover, plaintiff's "complaint" is filled with assertions that are bald legal conclusions and elaborate assertions of conspiratorial conduct involving and against his mother which date back to family disagreements beginning in 2000. The allegations range from falsifying power of attorney instruments to gain control over toten trusts to attorney representation of plaintiff's mother in a manner that was adverse against plaintiff with regard to any claims he had at that time under his mother's trust. *See e.g.* Complaint (Doc. No. 1-2 in 1:11cv230) at ¶¶ 12-26. These actions deprived plaintiff of control by way of determinations in divorce proceedings and probate court in March of 2000. *Id.* at ¶ 26. Shortly thereafter plaintiff was unable to make mortgage payments on the family property and was forced to file for bankruptcy in order to save his parents' estate. *Id.* at ¶ 27. Attorney/defendant Richter got around the bankruptcy stay by collecting his fee for the divorce action in San Diego, which was done by forging plaintiff's mother's name to documents presented to the Bankruptcy judge in New York. *Id.* at ¶¶ 29-30.

This elaborate scheme of theft resulted in the loss of apartments in Arizona valued at $1.4 million as well as the New York Bankruptcy Court failing to recover the full value of the $850,000 home owned by plaintiff's parents, the $96,000 proceeds from its sale, New York real estate valued at $15,000 and Pennsylvania real estate valued at $17,000, for a combined loss of $2.4 million. Id. at ¶¶ 38-38. Plaintiff's efforts to stop this elaborate scheme of fraud failed in a number of courts at the time. *Id.* at ¶¶ 40-41.

After plaintiff's mother suffered years of torture and neglect in a nursing home pursuant to a placement by plaintiff's sister's forged power of attorney over his mother, *id.* at ¶¶ 43-83, plaintiff gained control of his mother through his power-of-attorney and placed her at defendant Oceanside La Paloma care facility. *Id.* at ¶¶ 110-112. Sister soon came to the facility and sought to oust plaintiff's control. *Id.* at ¶ 117. Plaintiff planned to move his mother across the country to a nursing home in Pennsylvania so he could rebuild the family real estate business started with three properties in New Castle, Pennsylvania and his mother could continue to be his campaign manager. *Id.* at ¶ 121. Plaintiff was assaulted by staff when he attempted to remove his mother from the facility, but nevertheless removed his mother from the facility. *Id.* at ¶¶ 123-124. The Oceanside La Paloma care facility then made false reports to authorities that resulted in an all-points bulletin being issued for plaintiff. *Id.* at ¶¶ 126-132. Thereafter, at the insistence of Attorney Richter and plaintiff's sister, La Paloma care facility staff, Cleveland Clinic Police and Oceanside Police all joined in a conspiracy to separate plaintiff from his mother and the control of her care, all in violation of Ohio law. *Id.* at ¶¶ 138-145. Plaintiff's mother was taken back to Palomar Vista where medical staff tortured and eventually killed her. *Id.* at ¶¶ 146-162.

"The intent of RICHTER and LA PALOMA defendants, was to create a basis for police in another city to arrest or kill [plaintiff] while fighting for his Mother, to get [plaintiff] out of the way and punish [him], to allow RICHTER and these defendants to seize Mother and kill her so

she could not testify against them." *Id.* at ¶ 171. "These LA PALOMA defendants then caused

Sn Diego television XETV owned by the giant multinational Mexican corporation GRUPO

TELEVISIA, to report the same suggestion of crime that was broadcast in cities throughout the

United States from July 2009 to the date of the filing of this complaint, which suggest[ed]

[plaintiff] was wanted by police for a serious crime, and still is."   *Id.* at ¶ 172.  These defendants

gained control over plaintiff's mother's care and "[a] secondary effect of the false report was to

punish [plaintiff] by destroying his career and damage the rest of his life by a nation-wide

defamation that did, in fact destroy his run for office of Democratic candidate for the United

States House of Representatives from Pennsylvania in 2010, as evidenced by voters in his district

(Erie, Mercer, Butler) asking him what he did with his Mother's body before the slammed the

door and called police, and by the re-publication by Ultraconservatives David and Roberta Biros

in Mercer County, Pa., of the criminal suggestion, which compelled police in every county of his

congressional district to interview plaintiff, follow plaintiff door-to-door, and to detain and

harass [him], preventing [him] from fairly campaigning in three of the four main counties in his

election district." *Id.* at ¶¶173, 175.  The defendants continued to re-publish the defamation even

after the police cancelled the national police bulletin and XETV and David and Roberta Biros re-

published the defamation without checking its accuracy and plaintiff was "dogged" about the

story throughout his campaign. *Id.* at ¶ 176.  All of this resulted in numerous legal causes of

action that plaintiff can pursue on behalf of himself and his mother and father and losses of more

than $75 million. *Id.* at ¶¶  177-363.

The United States Court of Appeals for the Third Circuit has instructed the district courts

to utilize a two-step analysis to determine whether to direct service of a complaint where the

plaintiff seeks to proceed in forma pauperis.  First, the court must determine whether the litigant

is indigent within the meaning of 28 U.S.C. § 1915(a).  Second, the court must determine

whether the complaint is frivolous or malicious under 28 U.S.C. § 1915(d).  *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990).  The court finds plaintiff to be without sufficient funds to pay the required filing fee.  Thus, he will be granted leave to proceed in forma pauperis.

In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court identified two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those with factual contentions which clearly are baseless.  *Id.* at 327.  An example of the first is where a defendant enjoys immunity from suit, and an example of the second is a claim describing a factual scenario which is fanciful or delusional.  *Id*.  In addition, Congress has expanded the scope of § 1915 to require that the court be satisfied that the complaint states a claim upon which relief can be granted before it directs service; if it does not, the action shall be dismissed.  28 U.S.C. § 1915(e) (2) (B) (ii).

A review of plaintiff's "complaint" reveals that it fails to state a claim upon which relief can be granted.   This court lacks jurisdiction over the defendants, venue is improper in this district, the factual allegations of the complaint are fanciful and the legal theories are indisputably meritless.  Consequently, it is subject to dismissal for these reasons as well.

Each of the pertinent *Poulis* factors weighs in favor of dismissal.  The complaint likewise fails to state a claim for relief under *Neitzke* and its progeny.  Consequently, the action appropriately must be dismissed as vexatious and filed for vindictive and obstructive purposes. An appropriate order will follow.

Date: September 29, 2014

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Mel M. Marin
       P.O. Box 1654
       Hermitage, PA 16148
       (*Via United States Mail*)